UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION


EARTON LYNN SMITH                          CIVIL ACTION NO. 10-cv-1070

VERSUS                                     JUDGE HICKS

KEVIN HUMPHREY, ET AL                      MAGISTRATE JUDGE HORNSBY


**REPORT AND RECOMMENDATION**

**Introduction**

Earton Lynn Smith ("Plaintiff") is a self-represented prisoner who filed this civil rights action against several Bossier City police officers and detectives.  He alleges retaliation, false testimony, and other misbehavior related to various criminal investigations and proceedings that took place primarily in 2006.  The court recognized on initial review that the complaint, filed in June 2010, was potentially untimely.  Because the allegations were often difficult to interpret, and some of the allegations covered a wide range of time, the court acted out of an abundance of caution and ordered Defendants to answer the complaint.

Defendants have filed a Motion for Summary Judgment (Doc. 47) by which they raise timeliness and merits defenses.  Plaintiff has filed his own Motion for Summary Judgment (Doc. 50) in which he largely repeats the allegations in his complaint, as amended.  Plaintiff's motion also clarifies that the facts underlying his claims are well outside the one-

year period of limitations.  For the reasons set forth below, it is recommended that Plaintiff's motion be denied and that Defendants' motion be granted.

**Relevant Facts**

Plaintiff alleges that he was the victim of a shooting on March 15, 2006.  He contends that police officers Kevin Humphrey and Shane McWilliams were "unresponsive" to investigating the crime. Plaintiff attributes the inaction to retaliation based on a 1998 incident in which Plaintiff was accused of committing battery on police officers.

McWilliams, now the chief of police, testifies that he and several other officers were dispatched in response to the shooting of two black males, one of whom was identified as Plaintiff.  The investigation revealed that Plaintiff had been taken to a hospital by an unknown individual right after the shooting.  A police officer was sent to the hospital to interview Plaintiff.  When it was learned that Plaintiff had been moved to another hospital, yet another officer was sent to interview Plaintiff.  At the end of the investigation, Plaintiff was not arrested or charged with any crime in connection with the shooting.

Plaintiff's next allegations surround a shooting that occurred a few days later on March 21, 2006.  Cordell Clark told police that he was walking home from a store that day when he saw a man, whom he later identified as Plaintiff, looking at him from the passenger seat of a passing car.  Clark said he proceeded on and, as he entered an alleyway near Bossier Elementary School, Plaintiff confronted him.  Clark said Plaintiff pointed a handgun at him and told him not to move, but Clark started running.  Plaintiff fired one shot, which struck Clark in the back of the upper thigh and exited the front of the thigh.  Plaintiff fired two more

shots, which struck a nearby residence.  Clark gave a statement to police two days later and identified the shooter as Plaintiff, whom he picked out of a photo lineup.

Officer Humphrey obtained a warrant for Plaintiff's arrest for attempted second degree murder of Cordell Clark and carrying a firearm in a firearm-free zone.  Plaintiff makes conclusory allegations that Humphrey committed perjury in his supporting affidavits. Plaintiff also suggests that Clark, whom he describes as a fugitive parolee, was "released under bribery offer" by Officer McGee. Plaintiff alleges, generally, that defendants McGee, Humphrey, and McWilliams conspired to deter, by force and intimidation, Cordell Clark from testifying truthfully in connection with the investigation.

Several days later, on April 15, 2006, Shreveport police and other law enforcement officers responded to the Highland neighborhood after two fugitives, Plaintiff and Carisa Coleman, were spotted there. Plaintiff jumped from a car and managed to elude the officers. He alleges that McGee then used intimidation and retaliation against Ms. Coleman and her mother, Ruby Coleman, and offered Carisa $5,000 and to remove fugitive warrants from her record.  In exchange, Carisa was to lure Plaintiff to be killed by law enforcement officers. Plaintiff alleges that Carisa contacted him by cell phone and told him of this bribery offer and criminal scheme to use her as bait to lure him into a trap.

The next significant events happened on July 29, 2006, and are recounted in State v. Smith, 7 So.3d 855 (La. App. 2nd Cir. 2009), writ denied, 25 So.3d 828 (La. 2010).  Carisa Coleman and Plaintiff apparently rejoined after the Highland events, but Ms. Coleman ended the relationship and moved to her brother's home in Bossier City.  She did not tell Plaintiff

of her new address, but on July 29 he knocked at the door and, as she unlocked it, pushed his way inside.  Ms. Coleman said that Plaintiff grabbed her by the neck, pushed her into a bedroom, and began slapping and cursing her.  Ms. Coleman testified that Plaintiff said that, "if he can't have me, can't nobody have me."  Her face was seriously bruised.

When Ms. Coleman's sister-in-law heard the commotion, she ordered Plaintiff to leave.  Plaintiff then pulled a handgun, held it to Coleman's head and threatened to kill her.  The sister-in-law ran from the room and called the police.  As Plaintiff heard the sirens, he ran out of the back door.  Officer John Morton was the first to arrive.  He saw Plaintiff running through the backyard with the butt of a handgun in his hand.  Plaintiff refused orders to stop, leaped over a fence, and escaped.

Plaintiff alleges that the charges of domestic abuse are false.  He contends that Officer McGee used force and threats against Ms. Coleman to obtain her testimony.  He states that McGee threatened Coleman with federal charges, the loss of her children, and other harms.  He also contends that police altered photographs of Ms. Coleman's face.

Shreveport police eventually arrested Plaintiff on August 10, 2006.  In November 2007, a jury convicted Plaintiff of aggravated burglary and possession of a firearm by a convicted felon, which charges arose from the July 29, 2006 incident.  Plaintiff filed a number of appeals and even habeas petitions in this court relating to these and other state court convictions.  He alleges in this civil action that the testimony of Ms. Coleman, Tamekia Kennedy, and other witnesses were influenced by intimidation and threats by defendants.

**Analysis**

Plaintiff presents claims under 42 U.S.C. § 1983, 1985, and 1986, as well as state law. Each claim is subject to a one-year period of limitations. Section 1986 provides that "no action under the provisions of this section shall be sustained which is not commenced within one year after the cause of action has accrued." In an action brought in federal court pursuant to Section 1983, the court borrows the state's statute of limitations for personal injury actions. The applicable rule of limitations in this case for the Section 1983 and state-law claims is the one-year prescriptive period established by La. Civ. Code art. 3492.  Hawkins v. McHugh, 46 F.3d 10, 12 (5th Cir. 1995).  That same one-year period applies to claims under Section 1985. McCoy v. Claiborne Parish Detention Center, 2011 WL 1898910, *3 (W.D. La. 2011) (Hicks, J.).

Federal law determines when the cause of action accrues, and it provides that it does so the moment the plaintiff knows or has reason to know of the injury that is the basis of his complaint. Helton v. Clements, 832 F.2d 332, 334-35 (5th Cir. 1987).  Characterizing events as occurring in the course of a conspiracy does not extend the time when the period of limitations begins to run.  Any cause of action accrues as soon as the plaintiff knew or should have known of the overt acts involved in the alleged conspiracy.  Id. at 335.

Plaintiff asserts claims of false arrest based on allegedly false affidavits and manufactured evidence.  The existence of such claimed injuries does not depend on the outcome of the subsequent criminal proceedings.  The cause of action accrues when the victim becomes detained pursuant to legal process, such as the arraignment.  Wallace v.

Kato, 127 S.Ct. 1091 (2007); Humphries v. City of Ganado, 2012 WL 1003573, *2 (5th Cir. 2012).

All of the events about which Plaintiff complains happened in 2006 or shortly thereafter.  He was arraigned and pleaded not guilty on charges related to the March 21 incident at a court appearance on February 27, 2007.  He does not contend that the key misdeeds, such as intimidation and bribery of witnesses, were unknown to him.  Rather, he alleges that the witnesses told him of the alleged wrongdoings soon after the events.

After initial review, the court considered dismissing the complaint based on untimeliness, but there were a few references to more recent dates.  Out of an abundance of caution, Defendants were ordered to answer and asked to address the merits as well as any timeliness defense.  Defendants did so in their motion.  Plaintiff provided his own motion, and the combination of the two provided the additional facts to flesh out the complaint and make clear that all of the claims are based on events that happened far beyond the timeliness window.

Accordingly,

**IT IS RECOMMENDED** that Plaintiff's Motion for Summary Judgment (Doc. 50) be **denied** and that Defendants' Motion for Summary Judgment (Doc. 47) be **granted**, resulting in the dismissal of all of Plaintiff's claims with prejudice.

**Objections**

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this report and recommendation to file specific, written objections with the Clerk of Court, unless an extension of time is granted under Fed. R. Civ. P. 6(b).  A party may respond to another party's objections within seven (7) days after being served with a copy thereof.  Counsel are directed to furnish a courtesy copy of any objections or responses to the District Judge at the time of filing.

A party's failure to file written objections to the proposed findings, conclusions and recommendation set forth above, within 14 days after being served with a copy, shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court.  See Douglass v. U.S.A.A., 79 F.3d 1415 (5th Cir. 1996) (en banc).

THUS DONE AND SIGNED in Shreveport, Louisiana, this 19th day of April, 2012.

MARK L. HORNSBY
UNITED STATES MAGISTRATE JUDGE